## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

BRANDON WILLIAMS                                   CIVIL ACTION

VERSUS

EAST BATON ROUGE CITY/PARISH,                      NO. 23-01581-BAJ-EWD
ET AL.

### RULING AND ORDER

This is a civil rights case. Before the Court is Defendant John Dauthier's **Rule 12(b)(6) Motion to Dismiss (Doc. 7, the "Motion")**. Plaintiff Brandon Williams opposes the Motion. (Doc. 10). For the reasons that follow, the Motion will be denied.

## I.    BACKGROUND

The Baton Rouge Municipal Fire and Police Civil Service Board (the Board) "serves as the Hearing Board on Municipal Fire and Police issues" in East Baton Rouge Parish. (Doc. 1-2 at 51 (citing La. Rev. Stat. § 33:2741)). If a police officer employed by the Baton Rouge Police Department (BRPD) were to appeal any disciplinary action, that appeal would go before the Board.

On October 15, 2020, the Baton Rouge Metropolitan Council appointed Plaintiff to serve as a member of the Board. (*Id.* at 51). In the summer of 2021, Plaintiff became Chairman of the Board—a position voted on by his fellow board members. (*Id.*). John Dauthier worked as a BRPD police officer throughout Plaintiff's time on the Board.

From the beginning, Dauthier opposed Plaintiff's appointment. (*Id.* at 49, 51). Indeed, he "made no secret of his dislike for Plaintiff." (*Id.* at 52). Further complicating matters, Dauthier became a Board member himself in April of 2022—serving alongside Plaintiff. (*Id.* at 52). Following Dauthier's appointment, Plaintiff alleges that Dauthier "initiated a systematic, nefarious, illicit and unlawful plot to undermine the public trust and confidence in Plaintiff." (*Id.*).

Plaintiff alleges that Dauthier used his position as a police officer to gather "dirt about Plaintiff." (Docs. 10 at 2; 1-2 at 52, 53). Using his "police department computer," Dauthier conducted an unauthorized investigation of Plaintiff, accessing "private and confidential information" about his past "run ins [sic] with law enforcement." (Doc. 1-2 at 51). This information (or "dirt") was not part of the public record; it was allegedly gathered during investigations by law enforcement agencies and held in secure law enforcement databases that are not available to the public. (*Id.* (describing the information as taken from "sources and databases which are not public and contain private information"); *Id.* at 51 (describing "private and confidential information . . . available to law enforcement but otherwise generally protected from public disclosure.")). To "verify that specific police reports or files" related to Plaintiff, and to otherwise aid in his investigation, Dauthier allegedly used Plaintiff's personal identifying information "obtained from the driver's license database." (*Id.* at 55 (alleging that Dauthier obtained and used personal identifying information "such as driver's license pictures, date of birth, identifying numbers and address")).

2

Dauthier intended to make the "dirt" he had gathered public by providing it to a local YouTuber. But first, Dauthier purchased certain public records about Plaintiff from the EBRP Clerk of Court "to give the appearance that the [confidential] information [Dauthier] . . . was [disclosing] to the [YouTuber] was legally obtained through lawful means and public records." (*Id.* at 54). But Dauthier "knew of these [public] records, and knew the person in the records was Plaintiff, only because of the illegal access to Plaintiff's file." (*Id.*).

Dauthier then provided that confidential information, along with the public records, to a local YouTuber who published "the dirt" on June 13, 2022. (*Id.* at 52, 53). In the post, the "[YouTuber] stated that according to police department records Plaintiff had had ten run ins with law enforcement." (*Id.* at 53). The published information "included incidents in which Plaintiff was not at fault and of which there was no public record." (*Id.*).

Given its nature and contents, "it was obvious that the information [] had to have been released by an employee of the BRPD or a Police Officer who had access to the confidential information" maintained on law enforcement databases. (*Id.*). However, BRPD's Disciplinary Code precludes any officer from "institute[ing] an independent investigation" like the one at issue "without first obtaining authorization from the Chief of Police . . . ." (*Id.* at 50 (quoting BRPD Disciplinary Article 3:6)).[1] It

---

[1] BRPD'S Disciplinary Code, "codif[ies] the rules and procedures necessary to ensure the orderly performance of duty." BRPD General Order No. 112 at 1, *Discipline* (revised May 27, 2022). The Disciplinary Code "is structured in the same manner as the Louisiana Criminal Code, with offenses grouped in categories based on the relative seriousness of the offense. There are three categories numbered sequentially from least to most serious." *Id.* at 1.

likewise mandates that "[a]ll department business is to be considered confidential and no member shall release any information to anyone without proper authorization." (*Id.* (quoting BRPD Disciplinary Article 3:8)). For these reasons, BRPD immediately opened an Internal Affairs Investigation into the "release of the information." (*Id.* at 53). That investigation revealed that Dauthier had "investigated Plaintiff using his police department computer" just days before the information was posted on YouTube. (*Id.* at 54).

The release of this "personal and confidential police department information" damaged Plaintiff both personally and professionally. (*Id.* at 56). And so, he filed suit in state court against Dauthier and the City of Baton Rouge. (*Id.* at 49–57). Plaintiff alleges the release of confidential information about his past "run ins with law

---

"Offenses" are defined as "violation of statutes, ordinances or those provisions of the Code of Conduct or Procedural Manual which could threaten the integrity of the department, pose a danger or threat to the public or members of the department, and/or have criminal consequences." *Id.* at 17, § 3.0.

Plaintiff alleges that Dauthier acted in violation of Disciplinary Code Articles 3:6 (Unauthorized Investigations) and 3:8 (Confidentiality)—i.e., offenses found in the third and most serious category:

> **3:6 Unauthorized Investigations**
> No member will institute an independent investigation of any other member or any public official without first obtaining authorization from the Chief of Police or his designee. . . .
>
> **3:8 Confidentiality**
> All departmental business is to be considered confidential and no member shall release any information to anyone without proper authorization. No member shall make known to anyone a proposed action of the department or the details of any police action.

(Doc. 1-2 at 50 (quoting BRPD General Order No. 112 at 18, §§ 3.6, 3.8)).

enforcement" infringed on his right to privacy secured by Article I, Section 5 of the Louisiana Constitution. He also sues for invasion of privacy under state tort law, La. Civ. C. art. 2315. (*Id.* at 49–55). Plaintiff later amended to add a claim under the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721, for Dauthier's alleged use of his personal information "obtained from the driver's license database" to aid the unauthorized investigation. (*Id.* at 55).[2]

Following service of the amended Complaint (*Id.* at 49–57), both Defendants removed this cause of action to federal court. (Doc. 1). Once removed, Dauthier moved to dismiss the amended Complaint. (Doc. 7).

## II.  LEGAL STANDARD

Taken together, Rules 8(a)(2) and 12(b)(6) "call for a short and plain statement of the claim showing that the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("no heightened pleading rules" for plaintiffs alleging "violations of constitutional rights"); *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply."). Indeed, the complaint need only contain enough factual allegations "to raise a reasonable hope or expectation that

---

[2] The City of Baton Rouge has not joined in Dauthier's Motion, or otherwise moved to dismiss. In his Reply Memorandum, Dauthier briefly argues that Plaintiff seeks to hold the City "liable for Dauthier's alleged acts." (Doc. 11 at 4). The argument is perfunctory and Dauthier's point in making it is not entirely clear. But nonetheless, Dauthier cannot raise arguments on the City's behalf.

discovery will reveal relevant evidence of each element of a claim." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). The allegations "need not be detailed or specific," *Durham v. AMIKIDS, Inc.*, No. 17-cv-343, 2018 WL 11319406, at *2 (M.D. La. Apr. 5, 2018), and are entitled to an "assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Likewise, the task of resolving a motion under Rule 12(b)(6) is not onerous — it simply requires "common sense." *Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-cv-177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011). The court's job is "not to decide if the plaintiff will eventually be successful, but to determine if a legally cognizable claim has been asserted." *Durham*, 2018 WL 11319406, at *2.

## III.    DISCUSSION

### A.    Invasion of Privacy

The right to privacy secured by Article I, Section 5 of the Louisiana Constitution has been described as the right to be "let alone" and free from "unnecessary public scrutiny." *DeSalvo v. State*, 624 So.2d 897, 901 (La. 1993). "[Article I, Section 5] applies only where one has a reasonable expectation of privacy in the matter sought to be protected." *Capital City Press v. East Baton Rouge Par. Metro. Council*, 696 So. 2d 562, 566 (La. 1997). "A cause of action for invasion of privacy [also] lies under [Louisiana Civil Code Article] 2315 for, among other acts, unreasonable disclosure of embarrassing private facts." *Daly v. Reed*, 669 So. 2d 1293, 1294 (La. App. 4 Cir. 1996).

If a reasonable expectation of privacy is found, a plaintiff must then "demonstrate that defendant's conduct was unreasonable based on a balancing of [the plaintiff's] interests in protecting [their] privacy from serious invasions" against the disclosure interests. *Stuard v. Terrebonne Par. Consol. Gov't*, No. 09-cv-3790, 2011 WL 337883, at *3 (E.D. La. Jan. 31, 2011). This balancing occurs whether the claim sounds in state tort or constitutional law. *See Henderson v. Bd. of Supervisors of S. Univ. & A&M Coll.*, 663 F. Supp. 3d 542, 579 (M.D. La. 2023) ("To be actionable, a defendant's conduct must be unreasonable . . . . [R]easonableness . . . is determined by balancing the interests of the plaintiff in protecting his privacy . . . with the defendant's interest in pursuing his course of conduct."); *City of Baton Rouge v. Cap. City Press, L.L.C.*, 4 So. 3d 807, 819 (La. App. 1 Cir. 2008) ("If, and only if, a reasonable expectation of privacy is found, the court must weigh or balance the . . . disclosure interest against the privacy interest.").[3]

Here, Plaintiff alleges that Dauthier used his position as a police officer to gather "dirt about Plaintiff and release it to the public." (Docs. 10 at 2; 1-2 at 52, 53 (Dauthier provided the "dirt" to a local YouTuber)). More specifically, Plaintiff claims that Dauthier used his "police department computer" to access "private and

---

[3] In his Motion to Dismiss, Dauthier's argument is limited to whether Plaintiff has sufficiently alleged a reasonable expectation of privacy in the information disclosed. (Doc. 7-1 at 8-9); (Doc. 11 at 6). For that reason, the Court's analysis is likewise limited to this element of the claim. *See Mitchell v. City of Cent.*, No. 20-cv-294, 2021 WL 4256470, at *9 (M.D. La. Sept. 17, 2021) ("[T]he Court will deny Central Defendants' motion [to dismiss, because] . . . neither party has offered significant briefing on the question of Plaintiff's [c]onstitutional right to privacy. . . . [N]either party has argued . . . about the appropriate constitutional balance between Plaintiff's alleged privacy interest and the public's need for disclosure. On this ground alone, the Court could deny the instant motion.").

confidential information" about his past "run ins" with law enforcement. (Doc. 1-2 at 53 ("The [YouTuber] stated that according to police department records Plaintiff had had ten run ins with law enforcement.")). This information (or "dirt") was not part of the public record; it was allegedly gathered during investigations by law enforcement and held on secure law enforcement databases. (*Id.* at 51 ("sources and databases which are not public and contain private information"; "private and confidential information . . . available to law enforcement but otherwise generally protected from public disclosure.")).

Based on Dauthier's reading of the Complaint, the information (or "dirt") disclosed to the YouTuber consisted of only public records obtained from the clerk of court, and the initial reports of investigating police officers, which are also matters of public record. Dauthier therefore argues Plaintiff had no reasonable expectation of privacy. (Doc. 7-1 at 8, 9). He later inconsistently complains that Plaintiff never "identifies the alleged content of the 'dirt,'" or even alleges "a reasonable expectation of privacy in the 'dirt'." (Doc. 11 at 6). Because of this, Dauthier insists that Plaintiff cannot state a claim for relief. The Court disagrees.

To begin, Dauthier simply ignores the gravamen of Plaintiff's factual allegations, cherry-picking a single allegation from the Complaint, in arguing that only public records are at issue: "[Dauthier] went to the [East Baton Rouge Parish] Clerk of Court's Office and purchased certain public records regarding Plaintiff. . . ." (Doc. 7-1 at 8 (citing Doc. 1-2 at 54)). Dauthier points out that public records obviously "cannot serve as the basis for Plaintiff's invasion of privacy claim." (*Id.* at 8).

8

Otherwise, Dauthier assumes any other evidence of Plaintiff's "run-ins" with law enforcement must came from "initial reports." (*Id.* at 9). And because the initial reports of police officers investigating a complaint are also matters of public record, Plaintiff had no reasonable expectation of privacy in the information at issue. (*Id.* at 9 (citing La. Rev. Stat. § 44:3(A)(4)(a) (initial reports of investigating officers are public record))).

But at no point does Plaintiff allege a reasonable expectation of privacy in any public records—whether they be initial reports or records obtained from the clerk of court. *See Jaubert v. Crowley Post-Signal, Inc.*, 375 So. 2d 1386, 1391 (La. 1979) ("no right to privacy attaches to material in the public view"). In fact, the Complaint makes no mention of initial reports, nor does it include language that would limit "run ins with law enforcement" to the information contained in initial reports. *See* La. Rev. Stat. § 44:3(A)(4)(b) (detailing information in initial reports). And while Plaintiff does allege the universe of information given to the YouTuber included some public records from the clerk of court, (Doc. 1-2 at 54), when put into context, this allegation is not fatal.

Critical here, the Complaint alleges that Dauthier needed "authorization from the Chief of Police" to independently investigate Plaintiff using law enforcement databases. (*Id.* at 50 (quoting BRPD Disciplinary Article 3:6)). BRPD policy also precluded disclosure of any information on law enforcement databases "without proper authorization." (*Id.* (quoting BRPD Disciplinary Article 3:8)). Disclosing the confidential information would therefore violate these policies.

To conceal these violations, Plaintiff alleges some public records were included in the disclosure only to "give the appearance" that the confidential information was "legally obtained [by Dauthier] through lawful means and public records." (*Id.* at 54, 53 (Dauthier disclosed the private information gathered in his unauthorized investigation, "representing it to be authentic police department information."), 50 (YouTuber represented information about "run ins" with law enforcement as being provided "from the police department")). Aside from a single reference to public records, Plaintiff repeatedly alleges that Dauthier provided private information, held on secure law enforcement databases, concerning his past interactions (or "run ins") with law enforcement.[4]

Common sense and experience dictate what's clearly at issue—the private information which the public records were only meant to legitimize. Dauthier simply ignores this fact, which cannot warrant dismissal of Plaintiff's claim. *See Mitchell v. City of Cent.*, No. 20-cv-294, 2021 WL 4256470, at *11 (M.D. La. Sept. 17, 2021) ("Central Defendants' entire position rests on the premise that they disclosed only a redacted letter. But, as explained above . . . the Complaint alleges that one of the Central Defendants released an unredacted version of the letter to the press and that there was no justification for this conduct.").

---

[4] Plaintiff further alleges that Dauthier needed his personal identifying information to "verify" whether certain law enforcement and public records actually concerned Plaintiff. (Doc. 1-2 at 55). Interpreting this allegation in Plaintiff's favor, it suggests Plaintiff was not readily identifiable from even some of the public records.

Alternatively, Dauthier suggests that "Plaintiff never identifies the alleged content of the 'dirt'" and "never alleges that he had a reasonable expectation of privacy" in it. (Doc. 11 at 6). According to Dauthier, these insufficient allegations are "fatal to [Plaintiff's] claim under Article I, Section 5 of the Louisiana Constitution."[5] (*Id.*). But again, Dauthier's argument is inconsistent with the Complaint.

First, the 'dirt' is sufficiently described—it concerned Plaintiff's ten "run ins with law enforcement," (Doc. 1-2 at 51), and "included incidents in which Plaintiff was not at fault and of which there was no public record," (*Id.* at 53). The information was allegedly gathered during law enforcement investigations, (*Id.* at 51), and maintained on "private law enforcement database[s]" accessible only to "[law enforcement] agencies [in] East Baton Rouge Parish and the DA's Office," (*Id.* at 54 ("Due to the sensitive nature" of the information held on the DA's Office database, BRPD "rules require prior authorization and approval by the officer's supervisor" to obtain access.)). Dauthier ignores these allegations. And in doing so, he offers no argument as to why they might be deficient.

Beyond that, Plaintiff does allege that he had a reasonable expectation of privacy in the so-called "dirt." (*Id.* at 55 (describing information as not part of the public record and available only to law enforcement, and alleging an "absolute protected constitutional right to privacy" in it)). Indeed, the Complaint repeatedly claims the "dirt" provided to the YouTuber was "private," "confidential," and outside

---

[5] Plaintiff alleges that Dauthier's invasion of his privacy violated both Article I, Section 5 of the Louisiana Constitution and Louisiana Civil Code Article 2315. But the Motion to Dismiss is limited to Plaintiff's constitutional privacy claim. Therefore, Dauthier has not sought dismissal of Plaintiff's privacy claim under state tort law.

the public record. (*Id.* at 52 ("private and confidential information regarding [Plaintiff] . . . that [Dauthier] obtained using the police department computers and databases"), 51 (Dauthier used his BRPD laptop to "access sources and databases which are not public and contain private information"), 51 ("The private and confidential information . . . included information available to law enforcement but otherwise generally protected from public disclosure."), 52 ("private and confidential information . . . obtained using the police department computers and databases"), 53 ("Because of the nature, substance and content of the information . . . [it] had to have been released by . . . a police officer who had access to the confidential information."), 54 (Dauthier accessed and obtained private information from Case365 without the necessary approval; "Case365 is a private law enforcement database") ("sensitive nature of this private information"), 55 (Plaintiff had a right to privacy in the "personal, confidential or private information contained . . . within BRPD database"), 56 ("private, personal and confidential police department information")).

Plaintiff further alleges that Dauthier needed his personal identifying information from the driver's license database to "verify" whether certain law enforcement and public records actually concerned Plaintiff. (*Id.* at 55). This suggests Plaintiff was not readily identifiable from certain confidential records, and even some of the public records. Finally, Plaintiff alleges Dauthier violated BRPD policies that preclude officers from "abusing [the] investigative tools" at their disposal and from disclosing confidential information related to "ongoing investigations." (*Id.* at 50).

Considering these allegations as true and in Plaintiff's favor, the Complaint "clearly evinces [Plaintiff's] subjective expectation of privacy" in the information at issue. *Rasier, LLC v. City of New Orleans*, 222 So.3d 806, 818 (La. App. 4 Cir. 2017). Beyond that, Plaintiff's "expectation of privacy was a reasonable one," as outlined below. *Rasier, LLC*, 222 So.3d at 816 (relying on city ordinance on type of information subject to disclosure in finding expectation of privacy was reasonable); *see also Beckett v. Serpas*, 112 So. 3d 348, 352 2012-1349, 1352 (La. App. 4 Cir. 2013) ("[A] court must determine not only whether the individual has an actual or subjective expectation of privacy, but whether that expectation is also of a type which society at large is prepared to recognize as being reasonable.").

In Louisiana, arrest records and the "investigative files" of law enforcement are generally exempt from the public record pending criminal litigation. *See In re Matter Under Investigation*, 15 So.3d 972, 990 (La. 2009) (law enforcement's "investigative files" are exempt from public record "as long as criminal litigation is pending or reasonably anticipated"); La. Rev. Stat. § 44:3(A)(1)(a) (law enforcement files and records "pertaining to pending" or "reasonably anticipated . . . criminal litigation" are exempt from disclosure); La. Rev. Stat. § 44:3(A)(4)(a) ("arrest records" are exempt from disclosure "until a final judgment of conviction or the acceptance of a plea of guilty"). Elsewhere, the state has implemented regulations to "zealously protect[]" the "integrity of personal information records" maintained on law enforcement databases, having recognized that the "privacy of an individual is directly affected by the collection, maintenance, use and dissemination of personal

13

information" by law enforcement agencies. 22 La. Admin. Code Pt III, §§ 301(E), (I) (because "legal protections are endangered by the misuse of certain information systems . . . it is the purpose of these regulations to provide safeguards for an individual against an invasion of his personal privacy . . . ensure the . . . integrity of criminal history record information collected, maintained, and disseminated by criminal justice agencies").

Critical here, Louisiana courts have found that statutes exempting information from the public record support an objectively reasonable expectation of privacy. *See Marine Shale Processors, Inc. v. State*, 572 So. 2d 280, 284 (La. Ct. App. 1990) ("The language of LSA–R.S. 44:3 A(7) exempts disclosure" of the records at issue "under the Public Records Act . . . . This privilege creates a reasonable expectation of privacy" in the records. "Moreover, the statute in this instance specifically creates a privilege consonant to the right of privacy granted generally by our state constitution."); *Beckett*, 112 So. 3d at 352 (because the information was exempt from disclosure by La. Rev. Stat. § 40:2532, individuals had a "reasonable expectation of privacy"); *Rasier, LLC*, 222 So. 3d at 819 ("In this case, Section 162-49(b) reflects a legislative choice to limit the ambit of potentially releasable information to the names and addresses of TNC permittees . . . Th[is] legislative choice . . . establishes that Mr. Doe had a reasonable expectation of privacy against disclosure of the redacted driver registry information."); *Mitchell*, 2021 WL 4256470, at *10 (relying in part on statute exempting information from public record in finding plaintiff had a clearly established right to privacy in information disclosed).

What's more, Louisiana's constitution "contains an affirmative establishment of a right of privacy," conveying a "higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution." *State v. Hernandez*, 410 So. 2d 1381, 1385 (La. 1982). This is especially true of privacy rights concerning dissemination of information, and autonomy. *See State v. Jackson*, 764 So. 2d 64, 71 & n.14 (La. 2000) (suggesting Article I, Section 5 parallels federal constitution's protection against unreasonable search and seizure, but expands privacy rights concerning dissemination and autonomy, as compared to the federal constitution (citing Devlin, J., *Louisiana Constitutional Law*, 51 La. L. Rev. 295 (1990) (labeling the three types of privacy rights as "search and seizure," "disclosural," and "autonomy" rights, and proposing the invasion of privacy clause was meant to expand protection in the latter two))); *accord Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1092 (La. 1990) ("to the language of the previous constitution . . . was added protection . . . against unreasonable invasions of privacy. [Its] ancestry . . . can be traced to the establishment in [*Griswold*] of a right to privacy and to fear of unreasonable gathering and dissemination of information on individuals through use of computer data banks.").

With that in mind, Louisiana courts have recognized an individual's right to privacy may be infringed by release of their "criminal history summary," *Ellerbe v. Andrews*, 623 So. 2d 41, 44 (La. Ct. App. 1993) (recognizing "privacy interest" in "criminal history summary . . . in the BCI's databank . . . [e]ven were we to find that the 'rap sheet' is not statutorily exempt from the Public Records Act, the privacy

interest" precludes its disclosure), and "being falsely labeled" as a suspected criminal, *Stuard v. Terrebonne Par. Consol. Gov't*, No. 09-cv-3790, 2011 WL 337883, at *3 (E.D. La. Jan. 31, 2011) ("False light invasion of privacy requires the undesired publicity to be objectionable to a reasonable person . . . Plaintiff alleges that as a result of stretching in a public park he has been falsely labeled as a suspicious person who watches children. . . . and if the facts are as Plaintiff claims them to be, then labeling him as a suspicious person who watches children is a false description."); *see also Mitchell* 2021 WL 4256470, at *9 ("Plaintiff has overcome qualified immunity with respect to the disclosure to the press of his name, his medical condition, and the unsubstantiated charges against him."); *Mullen v. City of Grenada, Miss.*, 704 F. Supp. 2d 567, 574 (N.D. Miss. 2010) (officer had an informational privacy interest in results of drug test and disclosure of results violated 14th Amendment to the U.S. Constitution — "There is no dispute that Mullen had to submit to drug testing in order to be a narcotics officer. However, there is no legitimate reason for that information to be disclosed to the general public. No weighing of these factors can allow for public disclosure of this fact.").

And so, the Court rejects Dauthier's argument that Plaintiff has not alleged a reasonable expectation of privacy in the information at issue.[6] *See Braden v. Wal–*

---

[6] While Plaintiff has alleged facts sufficient to survive the cursory arguments raised in the Motion to Dismiss, this does not mean his privacy claims will succeed on the merits. Indeed, discovery may later reveal that the universe of information disclosed does not support a reasonable expectation of privacy. Alternatively, even if a privacy interest exists, "Plaintiff must also demonstrate that defendant's conduct was unreasonable based on a balancing of his interests in protecting his privacy from serious invasions against Defendant's interest" in notifying the public of Plaintiff's alleged association with criminal activity. *Stuard v.*

*Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). Because no other arguments are raised concerning Plaintiff's invasion of privacy claims, the Court ends its analysis here and denies the Motion to Dismiss as to this claim.

### B.    Driver's Privacy Protection Act

The Driver's Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721–2725, "regulates the disclosure of personal information contained in the records of state motor vehicle departments (DMVs)." *Maracich v. Spears*, 570 U.S. 48, 52 (2013). Congress enacted the DPPA to address privacy concerns associated with personal information contained in motor vehicles records. *See Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 45 (2d Cir. 2013). Relevant here, the DPPA makes it unlawful for "any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a).

"[P]ersonal information" is defined as any "information that identifies an individual," and includes a person's "photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information. . . ." 18 U.S.C. § 2725(3). There are 14 exceptions for which disclosure of this information is permitted. *See* 18 U.S.C. §

---

*Terrebonne Par. Consol. Gov't*, No. 09-cv-3790, 2011 WL 337883, at *3 (E.D. La. Jan. 31, 2011). Because neither party has addressed these elements of Plaintiff's privacy claims, they are likewise not addressed by the Court.

2721(b)(1)-(14). These exceptions generally relate to various governmental and business purposes, including "use by any . . . law enforcement agency in carrying out its functions . . . ." *See* 18 U.S.C. § 2721(b)-(c).

To state a claim under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted. *See* 18 U.S.C. § 2724(a); *see also Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010). "The proper focus for courts is not the manner in which the information was acquired, but the use to which it is eventually put." *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 994 (8th Cir. 2011).

Here, Plaintiff alleges that Dauthier used his 'personal information,' obtained from the state's driver's license database, to run unauthorized searches of Plaintiff on various law enforcement databases. Plaintiff further alleges that Dauthier used the same personal information to "verify that specific police reports or files relate[d]" to Plaintiff. (Doc. 1-2 at 55). In response, Dauthier does not address these allegations. Instead, he emphasizes a separate allegation made at the beginning of the Complaint—that Dauthier was acting "under the color of law and under the imprimatur of law enforcement." (Doc. 7-1 at 11 (quoting Doc. 1-2 at 50)). Based solely on this allegation, Dauthier argues that Plaintiff has alleged he acted with "the approval of law enforcement, and was carrying out his functions when he allegedly accessed any information protected by the DPPA." (*Id.* at 11). For this reason alone, Dauthier insists his "access" of Plaintiff's protected information "was [for] a

18

'permissible use.'" (*Id.* at 11); *see* 18 U.S.C. § 2721(b)(1) (one of the fourteen exceptions is use of personal information by "law enforcement agency, in carrying out its functions"). This argument does not hold water.

The Complaint does begin with language that is often used in actions against police officers—*i.e.*, Dauthier "was acting under color of law and under the imprimatur of law enforcement" (Doc. 1-2 at 50). *See Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1094 (La. 1990) ("an action against state officers or persons acting under color of state law for damages caused by a violation of Article I, § 5 of the Louisiana Constitution"). But to be clear, this in no way equates to an allegation that Dauthier's use of personal information was therefore "approv[ed]," legitimate, or otherwise "permissible," as he claims. (Doc. 7-1 at 11). *See Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) (for purposes of section 1983, "a person [still] acts under color of state law when he abuses the position given to him by the State"); *West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.").

Instead, Plaintiff clearly and repeatedly alleges that Dauthier abused his position as a police officer by investigating Plaintiff without the required authorization or approval from his superiors. (Doc. 1-2 at 50 (Dauthier violated BRPD rules requiring prior authorization and approval to investigate Plaintiff), 50 ("abusing investigative tools to invade the privacy of law-abiding citizens"), 55

19

("Dauthier had no authorization"), 56 ("without authorization or legal cause utilized his position with law enforcement")). Plaintiff even repeatedly calls the investigation "illegal." (*Id.* at 53, 54). And just to be sure, he further alleges:

> [B]ecause of the nature, substance and content of the information released by the [YouTuber], [BRPD] initiated an Internal Affairs Investigation of the release of the information. The investigation discovered that [Dauthier] . . . investigated Plaintiff using his police department computer . . . .

(*Id.* at 53–54). Clearly, Dauthier's representation to this Court—that *Plaintiff* has alleged Dauthier used his personal information and otherwise acted with the approval of law enforcement—is not supported by the Complaint. Because Dauthier does not offer any other valid argument supporting dismissal of Plaintiff's DPPA claim,[7] his Motion must be denied for this reason alone.

Nonetheless, the Court notes that Plaintiff has sufficiently plead a cause of action under the DPPA to survive dismissal under Rule 12(b)(6). Plaintiff alleges Dauthier used his "personal information" protected by the DPPA, and originally

---

[7] In his Reply, Dauthier argues for the first time that Plaintiff's DPPA claim should also be dismissed because a single paragraph of this claim includes the phrase "on information and belief." (R. Doc 11 at 2). For this reason alone, Dauthier suggests Plaintiff has not alleged sufficient detail to state a claim for relief under the DPPA. To begin, this argument was readily available but not raised in Dauthier's Motion to Dismiss. It will therefore not be considered on appeal. *See Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-cv-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) ("Because reply briefs cannot be used to raise new arguments, the Court declines to consider these arguments."). But even if it were considered, this argument cannot carry the day. Like so many other conclusory arguments raised by Dauthier, he simply ignores the remaining allegations of the Complaint. Inclusion of the phrase "on information and belief" does not warrant dismissal where it precedes sufficient factual allegations. *See Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.").

"obtained from the driver's license database," to aid his investigation of Plaintiff. (Doc. 1-2 at 55, ¶ 30).

An unauthorized search of law enforcement databases to publicly discredit a personal adversary is not one of the 14 permissible uses of personal information enumerated under the DPPA. *See* 18 U.S.C.A. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."). This is sufficient to state a claim for relief under the DPPA and Dauthier's Motion to Dismiss (Doc. 7) must be denied. *See Santarlas v. Minner*, No. 15-cv-103, 2015 WL 3852981, at *3 (M.D. Fla. June 22, 2015) ("Plaintiff [] alleges . . . [when] the individual defendants accessed his personal information, they did not have a legitimate law enforcement purpose or other purpose permitted under the law. . . . [I]t is hard to plead a negative with great specificity; that there was no permissible purpose for the disclosure is about as precise as one could be."); *Wilcox v. Swapp*, 360 F. Supp. 3d 1140, 1146 (E.D. Wash. 2019) ("there is no requirement in the text of the statute that the state licensing department be the direct source of the personal information."); *Whitaker v. Appriss, Inc.*, No. 13-cv-826, 2014 WL 4536559, at *4 (N.D. Ind. Sept. 11, 2014) (Considering whether the allegations were sufficient to survive a Rule 12(b)(6) motion to dismiss, the court explained: "If the original source of the other government agency's information is the state department of motor vehicles, the DPPA protects" the subsequent disclosure or use of that information by a police officer.); *Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1058 (D. Minn. 2014) ("Plaintiff alleges that a

number of [local officers] impermissibly accessed her Private Data. . . . She also alleges that misuse of state databases has been established by a state report and hearing . . . . [S]he is a[n] [allegedly] well-known attorney in her area with strong ties to the community. . . . [T]hese facts taken together sufficiently state a plausible claim" under the DPPA "that Plaintiff's records were not accessed for a permitted purpose . . . ."); *Senne v. Village of Palatine, Illinois*, 695 F.3d 597, 599 (7th Cir. 2012) (The village police officer disclosed personal information that the village police department got from the state department of motor vehicles. This was sufficient to state a claim under the DPPA.); *Center for Individual Rights v. Chevaldina*, No. 16-cv-20905, 2018 WL 1795470, at *5 (S.D. Fla. Feb. 21, 2018) ("It would also be premature at this stage of the case to make a conclusive determination on the source of the information Plaintiff allegedly disclosed and distributed. Nearly all of the information in question appears on a driver's license, so there is at least some support for the allegation that Chevaldina's license was the source of the information. For these reasons, we conclude that Chevaldina has offered a plausible allegation that the protected personal information was disclosed and distributed from a motor vehicle record."); *Hatch v. LexisNexis Risk Sols., Inc.*, No. 19-cv-449, 2020 WL 1042256, at *4 (W.D.N.C. Mar. 3, 2020) ("Plaintiff has alleged . . . that personal information in the accident report may have come from 'a DMV database of driver's license information.' If it did, then the Amended Complaint plainly states a claim under the DPPA . . . .").

### C.    Qualified Immunity

Dauthier has asserted the defense of qualified immunity with respect to Plaintiff's claims under the federal DPPA and his state law claim for invasion of privacy. Again, Dauthier's Motion to Dismiss largely ignores Plaintiff's tort claim— seemingly treating the state tort and constitutional privacy claims as one. Nonetheless, "qualified immunity does not apply to Louisiana tort claims." *Beroid v. LaFleur*, No. 21-cv-516, 2022 WL 2826228, at *7 (W.D. La. June 2, 2022). To the extent Dauthier asserts qualified immunity, the Court makes clear that Dauthier is not entitled to the defense for Plaintiff's invasion of privacy claim under state tort law.

Otherwise, the defense of qualified immunity is relevant to Plaintiff's federal claim under the DPPA and his state constitutional claim for invasion of privacy. And the standard "is the same" for both. *Price v. Irons*, No. 19-cv-11451, 2020 WL 1638377, at *5 (E.D. La. Apr. 2, 2020). While "federal courts must apply the state's substantive law of qualified immunity" to a state constitutional law claim, *see Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008), Louisiana's test "for qualified immunity is indistinguishable from the federal test," *Buchicchio v. LeBlanc*, 656 F. Supp. 3d 643, 655 n.3 (M.D. La. 2023). For that reason, the Court discusses the assertion of qualified immunity with respect to both claims below, relying mainly on federal case law.

"Qualified immunity protects government officials acting within their authority from individual liability when their actions could reasonably have been believed to be legal." *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 391 (5th Cir.

2022); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (describing the "focus" of any qualified immunity analysis as "whether the officer had fair notice that her conduct was unlawful"). The doctrine provides "immunity from suit"—it is not a "mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Critical here, qualified immunity "involves a shifting burden of proof." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). First, the state official must satisfy their "burden of establishing that the challenged conduct was within the scope of [their] discretionary authority." *Cherry Knoll, LLC*, 922 F.3d at 318. "Once a government official establishes that [their] conduct was within the scope of [their] discretionary authority, it is up to the plaintiff to show that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time." *Sweetin*, 48 F.4th at 391.

Despite this clear two-step process, "[t]he first part of the rule often gets overlooked." *Id.* at 392. As the Fifth Circuit recently clarified:

> To even get into the qualified-immunity framework, the government official must satisfy [their] burden of establishing that the challenged conduct was within the scope of [their] discretionary authority.

*Id.* at 392; *see also Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) ("Defendants must first satisfy their burdens of establishing that the challenged conduct was within the scope of their discretionary authority."); *Parker v. Armstrong*, No. 22-cv-413, 2024 WL 3730657, at *4 (W.D. Tex. Aug. 7, 2024) ("While it has become common practice upon an assertion of qualified immunity to begin [with] the analysis of plaintiff's rebuttal," a court must instead perform "a preliminary analysis of the

action taken by Defendants."). "That oft-overlooked threshold requirement is dispositive here." *Sweetin*, 48 F.4th at 392.

To meet their initial burden, the officer must "demonstrate that [they] acted with a good faith belief that [their] actions were within [their] lawful [discretionary] authority." *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980). Officials act within their "discretionary authority when [they] perform[ ] non-ministerial acts within [the] boundaries of [their] official capacity." *Cronen v. Tex. Dep't of Hum. Servs.*, 977 F.2d 934, 939 (5th Cir. 1992). "The scope of discretionary action is determined by relevant state law." *Parker v. Armstrong*, No. 22-cv-413, 2024 WL 3730657, at *4 (W.D. Tex. Aug. 7, 2024). And so, if a rule or "policy allows no leeway for individual deliberation, then it should be classified as ministerial." *Parker*, 2024 WL 3730657, at *4. But "if an action involves personal deliberation, decision and judgment, it is discretionary." *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999).

Here, Dauthier completely bypasses his initial burden of showing he acted in good faith and within his discretionary authority, focusing entirely on Plaintiff's burden. He argues in conclusory fashion that Plaintiff has not pled a violation of a "clearly established right" to privacy under the Louisiana constitution (Doc. 7-1 at 10), or "show[n] that no reasonable officer . . . could have believed he was accessing Plaintiff's driver's information for a permissible use under the DPPA" (*Id.* at 12).

Therefore, Plaintiff cannot "defeat [Dauthier's] claim of qualified immunity." (*Id.* at 10).[8]

And so, at no point does Dauthier allege his investigation of Plaintiff (including the use of Plaintiff's personal information), or his disclosure to the YouTuber, were within his discretionary authority as a BRPD officer. He points to no state law or policy that might demonstrate the scope of his discretionary authority. And Dauthier makes no argument that he acted in good faith when he investigated Plaintiff or disclosed the information resulting from that investigation. Good faith and discretionary authority have been completely overlooked. (*Id.* at 10, 12). Put simply, Dauthier has wholly failed to meet his initial burden.

By contrast, Plaintiff specifically alleges that Dauthier knowingly lacked the authority to initiate an investigation into Plaintiff and violated multiple BRPD policies in both conducting the investigation and disclosing the information it yielded. According to the Complaint, Dauthier "abus[ed]" his position as a police officer to investigate Plaintiff using his BRPD laptop to access confidential law enforcement databases. (Doc. 1-2 at 50, 51). Dauthier is alleged to have knowingly violated the

---

[8] Not only does Dauthier ignore his initial burden, the arguments he does present are "mostly general legal statements and empty platitudes." *See A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) ("[T]he qualified-immunity argument was underdeveloped." "[Defendants] argue that the contours of any right were not clearly established . . . [and] contend that Tucker conducted lawful investigations and the Department lawfully enforced its standards in denying the renewal. These arguments are conclusory and inherently factual in nature, and therefore, aren't appropriate considerations in deciding a motion to dismiss."); *Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589 (10th Cir. 2020) ("Defendants argue they adequately raised qualified immunity in their motion to dismiss, and they urge us to reach the merits of their defense. But defendants' analysis of qualified immunity in that motion was cursory at best.").

BRPD Disciplinary Code in an effort to "ruin and destroy [Plaintiff's] public, personal and professional reputation." (*Id.* at 52).

Dauthier does not even respond to these allegations which, if accepted as true, may preclude the defense of qualified immunity. *Compare Sweetin*, 48 F.4th at 392 ("Wylie was not acting within the scope of his discretionary authority because state law does not give a permit officer the authority to conduct stops of any kind. . . . Wylie intentionally subjected [plaintiffs] to seizure, and Wylie admits he knew he had no authority to stop them. . . . Wylie is not entitled to qualified immunity."), *with Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (Where defendant "contend[ed] that he was authorized to direct resources such as assistant district attorneys and investigators to specific matters at his discretion," court found he was "entitled to assert a defense of qualified immunity" and proceeded to plaintiff's burden.).

Because Dauthier has not met his initial burden of showing that he acted in good faith and within his discretionary authority, the Court must deny his Motion to Dismiss based on qualified immunity.[9] *See Cherry Knoll, L.L.C.*, 922 F.3d at 319 ("Jones has failed to meet his burden of showing that the filing of the Subdivision Plats was within the scope of his discretionary authority. Therefore, the district court

---

[9] This is not to say that Dauthier can never establish his entitlement to qualified immunity. Rather, he has not done so based on the pleadings at this early stage of the litigation. *See McGee v. Carrillo*, 297 F. App'x 319, 321–22 (5th Cir. 2008) ("In the present case, the district court was correct in denying Carrillo's Motion to Dismiss because Carrillo has failed to demonstrate that he acted in good faith and within his discretion . . . . The record as it currently stands lacks . . . [information] that could guide a court as to whether or not Carrillo was acting in good faith in a matter committed to his discretion. To ask for more is not to commit this case to trial. But it is to say that the case needs to move to the summary judgment stage.").

erred in determining that Jones was entitled to the protection of qualified immunity at the Rule 12(b)(6) stage."); *Owens v. Stalder*, No. 08-768, 2009 WL 4405794, at \*5 (W.D. La. Dec. 2, 2009) ("Stalder has not pleaded his good faith, nor has he shown that he was acting within the scope of his discretionary authority. Stalder has not . . . [shown] he is entitled to qualified immunity . . . ."); *McFarland v. Brooks*, No. 14-cv-90, 2016 WL 1091096, at \*7 (N.D. Miss. Mar. 21, 2016) (Brooks and Henry submitted affidavits . . . . However, neither affidavit addresses the scope of their discretionary authority or whether the actions about which McFarland complains were undertaken in their official capacity. . . . [T]he Court cannot find that they are entitled to qualified immunity."); *Williams v. Treen*, 671 F.2d 892, 896-97 (5th Cir. 1982) ("Qualified immunity is an affirmative defense. The immunity is not automatically available to every [] defendant merely by virtue of his status as a government employee.").

And because Dauthier has not met his initial burden, the Court does not consider the remainder of the qualified immunity framework. *See Heritage Hunter Knoll, LLC v. Lamar Cnty., Mississippi*, No. 19-cv-15, 2019 WL 3892425, at \*4 (S.D. Miss. Aug. 19, 2019) (denying motion to dismiss based on qualified immunity, explaining: "Plaintiff argued in response that the Defendants have failed to carry their initial burden of establishing that the challenged conduct was within the scope of his discretionary authority. The Court agrees. Plaintiff, however, goes on to make an argument, assuming arguendo that Defendants carried that burden. The Defendants have not raised substantive qualified immunity arguments, and thus, the

Court will not engage in an analysis of an argument not at issue before the Court."). Because Dauthier has not sufficiently asserted the defense of qualified immunity, his Motion must be denied.

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant John Dauthier's **Motion to Dismiss for Failure to State a Claim (Doc. 7)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this ___ day of September, 2024

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**